Good morning, your honors. My name is Burton Jacobson. I represent the appellants in this case. How do you pronounce the name? Jacobson. J-A-C-O-B. I mean the clients. Oh, Szajer. Oh, okay. Szajer. Helene and Zoltan. For 12 years, my clients operated a gun store in West Hollywood. With a sterling reputation. Never had a problem. The gun unit of the Los Angeles Police Department. First question is, well, why did they have jurisdiction outside of the city of Los Angeles? Their claim was that they became sworn as Deputy U.S. Marshals. Not as agents of ATF, but Deputy U.S. Marshals, which would give them jurisdiction outside the city. They decided to set up an operation. They called it a sting operation. I call it an attempted entrapment. They send a confidential informant into the store with 11 LAPD guns. Eight of them, no question, are perfectly fine. Three of them, they claim, are not fine. One of them is a pistol, a .22 caliber pistol, a Whitney Wolverine. It's a very esoteric pistol. The company was only in business for a very short time. And the pistol has a shroud over the barrel and a nut. The nut covers threads. The pistol is fed with a magazine going up into the handle, or into the butt of the pistol. Isn't that all moot because your clients pled guilty to the gun at their home? They didn't plead guilty. They pled no... No. To a gun in their home. Found guilty. Found guilty. Filed no motion to suppress. There was no motion to suppress because, okay. Here's what I really want to get at with this. Get at it. I don't want... I don't think the court should look at what happens in a California criminal case with blinders. We have a situation where they charge two items that are mandatory imprisonment. They say, gee, we found three boxes of tracer ammunition in the store. And, gee, we found a 1941 French MAS rifle, which we claim is a grenade launcher. Both of those items carry mandatory imprisonment. A sentencing judge in California cannot suspend sentence, cannot grant probation, can't do anything except send them to prison. That's it. Now they come along and they say, well, wait a minute. Tell you what we'll do. We'll give you a get-out-of-jail-free card so you and your wife don't have to go to prison. Just plead. Just plead. Don't make the motion to suppress. Don't do anything. Just plead. No problem. So what's unusual about that? Nothing. That's what I'm trying to say. Nothing. It is common. Somebody would have to be the biggest fool in the world to risk saying, well, I don't want to take your deal. I want to try a motion to suppress. And if it's denied by a state court judge, they're cooked. They're cooked. They're going to prison. It makes no sense whatsoever. So have they challenged their conviction before the 1983 action was filed? The answer is no. Did they appeal it? No. Are they asking this Court to set the conviction aside? No. So how do you get around the Heck case? All right. In footnote 7 of Heck, and to me that's what this whole case is about, not the issue of qualified immunity. It was never raised below. There's a lot of issues as to whether that even applies, and I think it does not. But in footnote 7 of Heck v. Humphrey, what meaning are we going to give to that footnote, which indicates that in Fourth Amendment violations, you can still bring it. This circuit we know, and Judge Wilson below said, we know that the Ninth Circuit is going to rule that Heck v. Humphrey universally applies and you're dead. And therefore, he granted the motion for summary judgment. However, I'm hoping that this Court does not do that and maybe changes its mind, because of two more recent Seventh Circuit cases that say just the opposite. Those Seventh Circuit cases, and I've cited them in my brief, are also in direct conflict with the Second Circuit and the Sixth Circuit. So you want us to follow the Seventh Circuit. I do. And if we don't follow the Seventh Circuit, you're done. If we don't follow the Seventh Circuit, I'm cooked. I agree with you. And that's where we are with the thing. What we're going to have is a conflict in the circuits. Whether this is the case that will go up to the plaintiff's committee to see. I don't know. But certainly, having been at this a while, I know the Supreme Court will usually take a case where they want to resolve conflicts in the circuit. So we can't close our eyes to that exception in Heck v. Humphrey. Why would they put it in there if they didn't mean for us to pay attention to it? I would submit that they put it in there because we should pay attention to that exception. And if that exception is correct, here we have the trial court judge saying, it's the worst warrant I've ever seen. They should never have gone to the home. If that warrant was brought to me, I would never have issued it. And he goes through a whole litany of reasons of why the warrant is no good. Well, do you attempt to attack the warrant and risk going to prison, or do you take the get-out-of-jail-free card? I would submit, in the real world, you take the get-out-of-jail-free card and do not risk sending yourself and your wife to prison. I would submit that your question to me, Your Honor, is exactly what this case is about. Exactly. Tell me why you think, if you can, why you think you fit into what you call the exception of footnote 7. Okay. In footnote 7, I believe it is. It is. Is it 7? All right. In footnote 7, they indicate that in Fourth Amendment cases, it doesn't necessarily attack the conviction and that a party, particularly no contender cannot use in anything except that one criminal proceeding, can avail himself of the 1983 Civil Rights Act and claim that his civil rights were violated. That's what this case is all about. And that's what that action was in the district court, an alleged violation of 1983. Judge Wilson said, well, the Ninth Circuit is never going to go for it because of Heck v. Humphrey. Did the Seventh Circuit talk about the footnote, footnote 7? Indeed, they did. Indeed, they did. And how did they read that? They said that you can bring your Fourth Amendment violation and bring the 1983 action in two cases out of the Seventh Circuit. So here we are. All the Supreme Court said was maybe. Yeah. But what did they mean? Why did they put that footnote in there? That's what we have to ask ourselves. Why did they put that footnote in there? Well, here's what they said. However, the 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual compensable injury. Okay. If you're saying that pleading guilty to a crime that they had to plead and agree that they would not reduce, it's a wobbler, I'm sure Your Honor understands what a wobbler could be, a misdemeanor or a felony. They had to agree that it would be a felony, and they had to agree that they would never seek to have it reduced under California Code 17B to a misdemeanor. That was the deal. For that deal, you don't have to do anything. You don't have to go to jail. But what they have managed to do is put another gun store out of business. And I don't think we can put blinders on. We read the papers every day. We see what's going on. California is a little out of step with all of its neighbors, and there are more gun stores in California. I think there's one in the city of Los Angeles way out in the valley, and that's Turner's. I don't count Big Fives because Big Fives does not sell pistols. And what used to be hundreds of gun stores are now practically nil. And I think that they have succeeded. I think they are nefarious in what they're doing. And I think they're violating people's civil rights, and they should be held accountable. Did you want to say the balance of your time for rebuttal? I'm sorry, I didn't. Would you like to say the balance of your time for rebuttal? I would. Thank you, Your Honor. Thank you. Let's hear from the city. According to your opponent, you put a gun, so to speak, to these people's head, and they had no choice. Well, Your Honor, first of all, I'd like to say good morning. I'm Blythe Block. What essentially the plaintiffs are arguing here is that somehow their plea should be ignored. And a plea is just like any kind of a settlement agreement. You take your chances. You roll your dice. This was proposed to them. They knew, or they should have known, that when they pled NOLO, that they knew the impact of their decision. In fact, on the hearing transcript, they say outright, the judge asked them outright, do you understand that the impact of this plea, you will be considered convicted. You will no longer be able to own a gun. And they confirmed, yes, we do understand that. Do you agree with opposing counsel's representation that they were given the option of pleading before filing a motion to suppress? They weren't allowed to file a motion to suppress first? Absolutely not. There's absolutely no evidence of that whatsoever. The best that we have are some arguments of counsel, but we do not have a single bit of evidence regarding what happened in that criminal proceeding. And that really is the problem here, and this is what Heck is trying to avoid precisely. We have a criminal proceeding. Everybody went along with it. There was no motion to suppress. There was no effort to try to exclude this evidence. Nobody ever came into that criminal court and said that the warrant was bad or anything the police did was wrong. To the contrary, they came in and said on the record, there is a factual basis for this charge against me. Nobody ever tried to ---- Isn't that what plea bargains do? That's a plea bargain, isn't it? That's exactly right. But when you make your plea, when you reach your settlement, there's good parts to it and there's bad parts to it. They didn't have to take the risk of trial, but on the other hand, they had to accept the factual basis and also accept they were not going to be able to own guns anymore. And if they felt that there was a problem with the warrant or anything relating to the investigation, what they should have done is the motion to suppress in the criminal court. And what Heck says is what you don't do is sit there silently and then come back years later into Federal court and say, oh, yeah, you know that whole conviction that I pled to and that I said there was a factual basis for it? In fact, that was all unconstitutional. Never should have happened. That's exactly what Heck says. You should not have these differing outcomes. Is there anything in California state criminal court procedure that would prohibit a defendant from filing a motion to suppress and later entering into a plea bargain? Not that I'm aware of at all. I mean, to the contrary, if you file a motion to suppress, you get the evidence excluded. You're going to be in a much better position. You might not even have to do a plea. You might be out of court entirely. Because this is the other issue is that all of the evidence here, both the count to which they pled to and the counts that were ultimately dismissed, all arose from the same exact warrant. So if they had made any of these arguments, it seems to me, potentially, all of this evidence would have been gone. There would have been no criminal conviction. Is there a procedure in criminal state court in California? I'm showing my ignorance. Where you can file a motion to suppress, get an adverse ruling, enter into a plea, and preserve the right to appeal the adverse finding on the, in this case, the search warrant? My understanding is that you can do that with a misdemeanor, but you cannot do it with a felony. Now, don't quote me on that. That's my basic understanding. I can certainly follow up with research for you. There are a lot of cases where that happens. I don't know whether it's under California statutes or how, but we get a lot of them where they save the question and no-load the charge and save the evidence question, the Fourth Amendment question. And are those felonies or misdemeanors that you're talking about? They're felonies when they come up here. I mean, we get very few misdemeanor appeals or habeas misdemeanor appeals. So you're talking about criminal appeal. I'm sorry. I was thinking you were talking about Section 1983 cases, which is okay. Were you the prosecutor on this case? Not at all. I do not do criminal law. I'm a civil appellate attorney. I would like to also just make some points, too, with regard to my, the main thrust of my brief, as you might recall, was qualified immunity. Why? Did you have lack of faith in the other argument? No, not at all. I think it's just a more straightforward, easier argument because if you look at the declarations that were submitted and all the evidence, you just don't have malfeasance. You don't have, you have officers simply doing their job. Everything in the declaration is truthful. They disclosed it. It's not like we have some kind of a nefarious officer who's trying to get away with anything. He simply is pursuing a search warrant. The search warrant was granted. He executed it. Some stale information in that affidavit, was there not? Well, perhaps. However, there's two things. One is that when it comes to a gun, it's not like other evidence like drugs that are being sold. Guns are considered sort of stationary objects in that. If you have a gun, it's not like you're going to be getting rid of it necessarily. So there is a little bit more flexibility when it comes to illegal gun sales. But more importantly, the stale information was refreshed by the operation that was done right at the time of the application, the search warrant, the November 05 sting operation. Yeah, the district court did not address the qualified immunity issue, right? Ultimately, they did not, but it was, I would actually like to correct the statement that it was not made, the argument was not made below. In fact, that was one of the lead arguments in our motion for summary judgment. It was made. It was asserted in the answer. The record is there. We did assert it. It was certainly not waived. The district court just chose not to rely on that basis for granting the summary judgment. The district court focused on the hack. And that's a fascinating issue. Focused. Right, right, right. You're right. You're right. Hack in Monell. Hack in Monell. Right, right. If we decide one way or the other on hack, we don't need to reach the immunity issue, do we? Correct. It's sort of a choice issue, whatever. To me, the qualified immunity seemed more straightforward, but I do think hack is equally strong. It's just a little bit more interesting. The other thing I would just – I can't sit down without telling you that in the brief, there was a statement made that I was misleading the court with a date, and I don't know if it jumped out at you. I just want to definitely tell you it was nothing less than a typo, and it's on page 8, and if you look at it, you can see in the context. I simply typed in an 8 instead of a 5. And I would invite you to look at page 18 of my brief where I do not make that typo and I confront the staleness issue head on. All right. Thank you. Did you type your brief yourself? Always.  I work for the city attorney's office. Thank you, Your Honor. Thank you, counsel. Rebuttal. Thank you. I got to admit, too, I was an assistant United States attorney for a number of years, and it was a lot easier prosecuting some of the federal crimes than it is in this situation. Your Honor is absolutely right. The question of qualified immunity never did come up, and there was really serious issues of fact concerning it, whether tracer ammunition was planted, mandatory prison, whether that 1941 French rifle was, in fact, a grenade launcher. Was the search conducted before they went and got a search warrant? Was the evidence stale? As a matter of fact, it was information that was 10 years old. Ten years old, and that was the basis. They're talking about. . . That wasn't the only. Yeah. You were asking that question, and one of the things that allegedly led to the investigation was, in a different manner, they found an FN FAL rifle. You've got to know something about guns. There's an upper and a lower. Each one has a serial number. What that company did in Belgium was scavenge the parts and put the upper from one, the lower from another, had they run both serial numbers in. I don't know whether they did or not, but they certainly didn't tell them as of straight. They would have found that it was, in fact, in my client's acquisition and disposition books. The real issue in the case is what I said before, is Heck v. Humphrey. What does footnote 7 really mean? Does it have any application? If you are going to trial in a state criminal case, and the offer is made, and I was trial counsel in that case, and you know that if you file that motion to suppress, everything's off the table, and you're going to run that risk of imprisonment for your clients, you have to be a fool not to take it. That's the real world. But the counsel said there's no evidence in the record. Oftentimes the motion is filed, and once it's resolved, then the real negotiations start. Sometimes. But that wasn't the case here. I know there's no evidence, but that was not the case. All right. And unless you have questions, I mean, I pretty much said it in the briefs and what it's all about. All right. Thank you, counsel. Thank you to both counsel. Thank you very kindly. The case for argument is submitted for decision by the court. The next case on calendar for argument is Mejia Hernandez v. Holder.
judges: Zouhary, Goodwin, Rawlinson